O’NIELL, O. X
(dissenting). In the Democratic primary election held’ on the 15th of January, there were eleven candidates for nomination for members of the Legislature from the Third ward of the parish of Orleans. There were only two candidates to be nominated. The total number of votes cast for the eleven candidates was 13,324; which means that, as each voter voted for two candidates, as the statute required him to do, there were 6,662 ballots cast. Not one of the candidates received a majority of the ballots or votes cast. The four candidates receiving the highest number of votes were: James Barrett, having 3,167;. John P. Magner, 2,967; Charles A. Byrne, 2,962; and Thomas J. Dobbins, 2,655.
It became necessary then to have a second primary for the nomination of both of the candidates, to which the party was entitled, for members of the Legislature. And it was the duty of the Democratic parish committee (according to the second and the sixth paragraphs of the twenty-seventh section of the Act; 97 of 1922, pp. 196 and 199) to tabulate and compile the returns, and to certify the result to the secretary of state, to have the names of the candidates entitled to enter the second primary printed on the official ballot. The second primary (according to the sixth paragraph of the twenty-seventh section of the statute) is to be held five weeks after the first primary, which will be on the 19th day of February.
The committee met and tabulated the returns and certified to the secretary of state that the three candidates having the highest number of votes were James Barrett, John P. Magner, and Charles A. Byrne, and that their names should be printed on the official ballot for the second primary.
Thomas J. Dobbins then brought suit in the civil district court against Stanley McDermott, as chairman of the Democratic parish committee, to compel him to certify his (Dobbins’) name also to the secretary of state, *218 to be printed on the official ballot for the second primary. The civil district court, on Dobbins’ petition, issued an alternative writ of mandamus, directing McDermott as chairman of the parish committee to show cause why Dobbins’ name should not be certified to the secretary of state to be printed on the official ballot; and, at the same time, the court issued a temporary injunction, forbidding McDermott, as chairman of the committee, to certify to the secretary of state the names of the three candidates only, James Barrett, John P. Magner, and Charles A. Byrne, to be printed on the official ballot.
McDerWott, as chairman of the parish committee, had no further recourse, except to invoke the supervisory jurisdiction of this court. If he could have obtained an order from the civil district court dissolving the injunction, it would perhaps have been of no avail, because Dobbins could have kept the injlmction in force by a suspensive appeal, which could not have been disposed of finally, in the ordinary course of judicial., proceedings, in time for the secretary of state to have the official ballots printed. This court therefore issued an alternative writ of prohibition and an order temporarily staying further proceedings in the civil district court.
I concede that the civil district court would have jurisdiction to prevent by injunction a violation, of any express provision of the primary election law, by the parish committee, or to compel by mandamus the performance of any ministerial duty of the committee. But the statute — Act 97 of 1922 — does not make it the duty of the parish committee to certify to the secretary of state the names of four candidates, to be printed on the official ballot, in, a case like this. On the contrary, it is conceded by all of the lawyers on both sides of this ease — and it cannot reasonably be denied — that the authors of the primary election law neglected to provide especially for a case like this.
The statute does riot require, in a case like this, where two candidates are to be nominated, indiscriminately, for similar offices, by a majority vote, in a second primary, that the four candidates who received the highest number of votes in the first primary shall be allowed to enter the second primary. On the contrary, the .statute requires, in very plain terms, that only so many of the candidates who have received the highest number of votes in the first primary shall be allowed to enter the secraffi primary as to make it certain that one candidate for each office to be ¡filled shall receive a majority of the total number of votes to be cast in the second primary. The statute, in plain terms, declares that the only purpose of having a second primary is to prevent a candidate’s being nominated by only a plurality vote. The exact requirement, in that respect, is that there shall not be a second primary for any office unless, in the first primary, no candidate for that office received a majority of the votes cast. Therefore, the expressed and only object or purpose of having a second primary is to make sure that the nominee for each and every office will have received a majority of the votes cast.
If four candidates for the Legislature are allowed to enter the second primary, where two candidates are to be nominated indiscriminately, the second primary will not serve the purpose of making it certain that each of the two candidates having the highest number of votes will have a majority of the votes cast in the second primary. On the contrary, the result will very likely be that each of the two candidates receiving the highest number of votes cast in the second primary will not receive a majority t of the votes cast. It would be different, of course, if, instead of running indiscriminately for either of the two offices to be filled, each candidate had to designate which one of the two offices he aspires to. In that ease, of course, it would be right for the committee to allow four candidates to enter the second, primary, two candi *220 dates for each, office to be filled; in which event, one candidate for each office would be sure to receive a majority of the votes cast for that office in the second primary. But it is not so when, as in this ease, each candidate aspires to either one of the two offices to be filled, without having to designate which one of the two offices he is a candidate for.
The majority opinion rendered in this ease is founded upon an expression at the end of the -third paragraph of the twenty-seventh section of the statute — repeated in the sixth paragraph — which is applicable only when there is but one office to be filled, viz.:
“At the second primary election no one can be a candidate except the two persons who have received the highest number of votes for the office for which they were candidates.”
Of course, that expression cannot be applied to a case where, as in this case, there are two candidates to be nominated, indiscriminately, for similar offices. If we should apply the expression to this case literally, the two candidates who received the highest number of votes in thei first primary' would be certain of being nominated unanimously in the second primary, which would be a genuine mummery.
It appears to me that the method of reasoning in the majority opinion delivered in this case proceeds upon the theory that each candidate in the second primary will aspire, not to either of the two offices indiscriminately, but to a designated one of the two 'offices. For example, it is said:
“In a race where two are to be elected, no one can be said to be a candidate for but one of the offices to be filled; and the statute says the two highest candidates for such office shall have the right to enter the second primary. Therefore, if only three candidates were allowed to run, only one of the seats would really be contested, though eách candidate would have a chance to be elected. For instance, if A., B., and 0. were running, A. would be a candidate for one seat; B. would contest for the other; and C., necessarily, would have to be considered as seeking one or the other, but not both; hence, there would be no real contest for the remaining office, because two would have to be elected, and the voters would be deprived of their right under the statute of choosing between two candidates for both offices.”
It is a mistake to say, “If only three candidates were allowed to run, only one of the seats would really be contested.” If only three candidates were allowed to run, each one of the two seats would really he contested by each and all of the three candidates. For instance, if A., B., and O. should run, the situation would not be, as it is described in the majority opinion, that “A. would be a candidate for one seat; B. would contest for the other; and O., necessarily, would have to be considered as seeking one or the other, but not both.” The 'situation would not be that two of the candidates would be .paired off against the third. Each one of the three candidates would he a candidate for eithey one of the two offices, indiscriminately. Instead of O.’s contesting with either A. or B., as is suggested in the majority opinion, he would contest with both of them; and so would each of them contest with the two others. Instead of there being only one candidate for either one of the offices to be filled, as is suggested in the majority opinion, there would be three contestants for each one of the offices to he filled. And the result would be what the statute requires — that the second primary must put an end to all of the contests, by making it certain that one candidate for each office shall receive a majority of the total number of votes cast for that office.
According to the majority opinion delivered in this ease,' the parish committee would have to allow the six candidates who received the highest number of votes to enter the second primary, if there were three candidates to be nominated for members of the Legislature — which is the case in some parishes. In that event — wjiich is very apt to occur— the second primary will almost surely he an idle ceremony. ,
It is said in the concluding paragraph of *222 the majority opinion that we are not called upon to decide what shall he the consequence if, with four candidates running for two offices, indiscriminately, the second primary should not result in the nomination of two candidates. As a mathematical proposition, and according to the reliable theory of chances, it is very likely that, with four candidates running for two offices indiscriminately, two of the candidates will hot each receive a majority of the total number of votes cast. The reáson is that there will be six different combinations, or pairs of candidates, for the voters to select among. It will not do to say that we are not now concerned with the fact that, with four candidates running for two offices indiscriminately, it is likely that the second primary will be futile. The statute does not contemplate that there shall be a third primary, in a case like this, if only one of the candidates in the second primary should receive a majority of the votes cast. Neither does the statute contemplate that a plurality vote shall be sufficient to nominate a candidate in the second primary. If that woulcLsuffiee, there would be no sense in having second primaries. It has been suggested that the parish committee might have authority to select a nominee for the Democratic party if the second primary should fail in its purpose, because of there being four candidates running for two offices indiscriminately. The suggestion has reference to the thirty-first section of the primary election law, which provides that vacancies caused by death, resignation, or otherwise, among the nominees of a political party, shall be filled by the committee having jurisdiction over the ordering*of the primary election. It is certain that the authority given to the committee by that section of the statute does not include the power to make nominations for the political party, in a case like this. If the committee should have the authority to make the nomination in the event that this second primary shall fail in its purpose — which is quite likely — the committee will not be limited to the nomination of one of the four candidates, but may nominate any eligible person. That could not possibly have been the intention of the authors of this primary election law. It seems to me to be beyond all reason that the parish committee should be. required to allow so many candidates for any office to run in the second primary as to make the second primary 'fail in its purpose, and thus confer upon the committee itself the authority to make nominations for the political party.
The committee was absolutely right in certifying to-the secretary of state the names of the three candidates who had received the highest number of votes in the first prinjary. With three candidates running for two offices indiscriminately, in the second primary, two of the candidates would be sure to receive a majority of the votes cast. With four candidates running, it is very likely that two of them will not each receive a majority of the votes cast.
For the reasons stated, I respectfully dissent from the opinion given by my confreres in this case.